# DECKER v. PERRY.

## No. 19,266; February 28, 1894.

### 35 Pac. 1017.

**Irrigation District.—A Complaint Against an Irrigation District Officer** alleged that such proceedings had been had before the board of supervisors that said board declared the district duly organized. Held, no averment that the district was incorporated, as provided by act of March 7, 1887, since it did not show the jurisdiction of the board, or an election held, or that its declaration "was duly given or made," or that a copy of the order had been filed for record.

**Irrigation District — Assessment. — A Complaint to Recover Money Paid** on a public assessment must show the nature of the proceedings to collect it, the threat of which constituted the compulsion.

**Irrigation District—Assessment.—Where Thirty-three Days must have Elapsed,** after plaintiff paid the assessment, before the three weeks' advertisement of sale of his land therefor could have begun (Stats. 1891, p. 245), and he does not allege that any sale had been already advertised or otherwise threatened when he paid, he fails to show any intention to sell it such as would make his payment involuntary.

APPEAL from Superior Court, San Diego County; George Puterbaugh, Judge.

Action by Uri Decker against Wesley Perry for money had and received. Demurrer to complaint overruled and judgment for plaintiff. Defendant appeals. Reversed.

C. H. Rippey for appellant; D. L. Murdock for respondent.

VANCLIEF, C.—The defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled, and, upon failure of defendant to answer, judgment was rendered in favor of the plaintiff. This appeal is from the judgment on the judgment-roll, and presents the question whether or not the demurrer was properly overruled.

The object of the action is to recover from the defendant $5.02, alleged to have been unlawfully assessed to plaintiff on his land by the "Otay Irrigation District," and paid by plain-

tiff to defendant under protest, to prevent plaintiff's land
from being sold by the defendant as collector of said district.
It is averred in the complaint "that, on December 7, 1891,
such proceedings were had before the board of supervisors
of San Diego county, state of California, that the said board
of supervisors declared the Otay Irrigation District duly
organized under the name and style of 'Otay Irrigation Dis-
trict,' and declared" five persons—Funk, Modie, Jordan,
Spence and Merriam—elected as directors of said district,
and since that time said persons have been acting as such
directors; and that Charles Sanborn is acting as secretary of
said board, and the defendant, Wesley Perry, is acting as
collector of said Otay Irrigation District. That said board
of directors have voted to themselves salaries and fees amount-
ing to about $2,600, and claim to have contracted indebtedness
against said district for other purposes, amounting to nearly
$3,500. That on October 4, 1892, said board passed a resolu-
tion declaring that it was necessary, for the purpose of de-
fraying the expenses of the organization of the district,
including salaries of officers and employees, to raise the sum
of $9,179.62; and, by a further resolution, ordered an assess-
ment levied on the assessable property of said district of
$9,179.62; and, by a further resolution, fixed the rate of assess-
ment at ninety cents upon $100 valuation of the assessable
property of said district. That said board never submitted
to the electors of said district, at any election, the question as
to whether or not an assessment of $9,179.62 should be levied,
nor did said electors ever vote for any bonds, or to incur any
indebtedness upon said district. That, after the levying of
said assessment, the defendant, as collector of said district,
received from the secretary of the board the assessment-books
of said district, in which were entered said assessment against
the property within said district, among which was five acres
of land, the property of plaintiff, on which was assessed the
sum of $4.78; and thereafter the defendant caused to be pub-
lished in a newspaper published in said district a notice stat-
ing "that said assessment was due and payable, and would
become delinquent at 6 o'clock P. M., on the last Monday of
December, 1892, and that, unless paid prior thereto, five per
cent would be added." That, on December 29th (after the
last Monday in December), "the plaintiff, to prevent his above-

described property from being sold by the defendant as collector of said district, paid to the defendant said assessment of $4.78, together with twenty-five cents penalty, which sum was paid under protest made in writing and delivered to defendant at the time of such payment." A copy of the protest, with the defendant's acknowledgment of the receipt thereof, dated December 29, 1892, is attached to the complaint as an exhibit. The only ground of the protest is that no election had been called or had at which the question whether the assessment should be levied was, or could have been, submitted to the electors of the district.

It is contended for appellant that the payment of the assessment by the plaintiff was voluntary, and not induced by duress or coercion, and, therefore, that he is not entitled to recover it back; and the record seems to support this view. "The illegality of the demand paid constitutes of itself no ground for relief. There must be in addition some compulsion or coercion attending its assertion, which controls the conduct of the party making the payment": Brumagim v. Tillinghast, 18 Cal. 266, 79 Am. Dec. 76; Garrison v. Tillinghast, 18 Cal. 407. The complaint shows that the assessment was paid to defendant while acting as the agent or officer (collector) of an undefined association under the name and style of "Otay Irrigation District," operating through five directors, a secretary, and collector, but the kind or nature of whose business is not stated. Respondent's counsel claims in his brief, however, that the Otay Irrigation District is a corporation organized under the act of the legislature entitled, "An act to provide for the organization and government of irrigation districts," etc., approved March 7, 1887, known as the "Wright Act" (Stats. 1887, p. 29), and amendments thereof; but this fact is not averred in the complaint. The bare averment that "said board of supervisors declared the Otay Irrigation District duly organized" is not an averment of the facts or acts required by said act of the legislature to confer jurisdiction on the board of supervisors, or to constitute an organization of an irrigation district under that act. Nor is it an averment that an order, resolution, or "declaration" of the board to that effect had been "duly given or made," as required by section 456 of the Code of Civil Procedure: Judah v. Fredericks, 57 Cal. 391. The averment that the board declared the district

"duly organized" is substantially and essentially different from an averment that the board duly declared the district organized. But, even if the averment had been that the board duly declared the district organized, it would not have shown a completed organization. The law requires, as a prerequisite to a complete organization, that an election be held at which two-thirds of the votes cast shall be in favor of organizing the district; and section 3 of the act provides: "The said board of supervisors shall meet on the second Monday succeeding such election and proceed to canvass the votes cast thereat; and if upon such canvass it appear that at least two-thirds of all the votes cast are 'Irrigation District—Yes,' the said board shall, by order entered on their minutes, declare such territory duly organized as an irrigation district under the name and style theretofore designated, and shall declare the persons receiving respectively the highest number of votes for such several offices to be duly elected to such offices. Said board shall cause a copy of such order, duly certified, to be immediately filed for record in the office of the county recorder, . . . . and from and after the date of such filing the organization of such district shall be complete, and the officers thereof shall be entitled to enter immediately upon the duties of their respective offices." There being no averment that the board, duly or otherwise, caused a copy of its order declaring the district organized to be filed for record, the complaint fails to show that the organization of the district as a corporation was ever completed. Then, again, the complaint fails to show that the defendant threatened or intended to sell plaintiff's land, or any land within the alleged district. All that is alleged is that defendant published a notice "that said assessment was due and payable, and would become delinquent at 6 o'clock P. M. on the last Monday (26th) of December, 1892, and that unless paid prior thereto, five per cent would be added." No demand for payment other than such as may be implied in that notice appears to have been made. The compulsion or coercion which is sufficient to render a payment involuntary "must come from the party to whom or by whose direction the payment is made, and arise from the exercise or threatened exercise of some power possessed, or supposed to be possessed, by him over the person or property of the party making the payment": Garrison v. Tillinghast, 18 Cal. 407. The com-

plaint fails to show that the defendant to whom the assessment was paid possessed any power over the person or property of the plaintiff, or any reason for supposing he possessed such power; nor is it pretended that defendant had, or was supposed to have, any power over the person of the plaintiff, it being claimed only that defendant, as collector of the Otay Irrigation District, whatever that may be, had, or was supposed to have, power to sell plaintiff's land to pay assessments levied thereon by the directors of said irrigation district. But, since the complaint fails to show that the Otay Irrigation District was ever organized as a corporation according to any law, it fails to show any reason for the alleged supposition that the officers or agents of that district had power either to levy assessments on or to sell plaintiff's land. It is suggested, however, by counsel for appellant that the Otay Irrigation District is shown at least to be a de facto corporation, but this suggestion finds no support in the complaint; there being no averment that it or its officers ever claimed to be a corporation, or acted as such, or that plaintiff ever dealt with or recognized it as a corporation. All of the alleged acts of its officers or agents may have been lawfully done by an unincorporated association having no power to enforce payment of assessments by the sale of property of its members. But conceding, for the sake of argument, that the Otay Irrigation District was duly organized according to the Wright act, yet it does not appear that such pressure for payment was put upon plaintiff as would constitute duress or coercion in the legal sense. No sale of his land had been advertised or otherwise threatened before he paid the assessment; and thirty-three days must have elapsed, after he paid, before a notice of sale of his land could have been published, and no sale could have been made until after three weeks' publication of such notice: See sections 24 and 25, the act as amended, Stats. 1891, p. 245. For aught that appears in the complaint, there may have been no intention to sell his land.

Counsel have cited no case in this state, and I have found none, in which the money paid on an alleged tax or assessment has been recovered back when no seizure of property of the plaintiff had been made, and no sale thereof advertised or otherwise threatened. In addition to the cases above cited the following are more or less in point: De Baker v. Carillo,

52 Cal. 473; Bank v. Chalfant, 52 Cal. 170; Bank v. Webber, 52 Cal. 73; Bank v. Chalfant, 51 Cal. 369; De Fremery v. Austin, 53 Cal. 381; Meek v. McClure, 49 Cal. 623; Guy v. Washburn, 23 Cal. 111; Dear v. Varnum, 80 Cal. 87, 22 Pac. 76.

For all purposes of this appeal, it is assumed, without deciding, that the assessment may have been illegal because not authorized by vote of the electors of the district, as held in Tregea v. Owens, 94 Cal. 317, 29 Pac. 643, which case authoritatively construes the act of March 7, 1887, as originally passed, in relation to the power of the directors to levy assessments of the nature of that in question here, and is applicable to this case, unless that act has been changed, in respect to such powers of the directors, by the amendments thereof in 1891. I think the judgment should be reversed and the court below directed to sustain the demurrer.

We concur: Haynes, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment is reversed and the court below directed to sustain the demurrer.