## MOODY, for use, etc., *v.* VONDEREAU.

1. When a boundary given in a deed is the land of a named person, the description of this particular boundary will be sufficient, although the title of such third person may be defective, if it be made to appear that the maker of the deed recognized him as the owner and as claiming the land, and the boundary line of the adjacent tract is established by competent extraneous evidence.

2. A deed purporting to convey a parcel of an irregularly shaped tract of land, which describes the land conveyed as containing a definite and exact number of acres, and bounded on the west, south, and east by well defined boundaries, and on the north by the land of the grantor, is not void for uncertainty. In the absence of a contrary intent appearing, the northern line of the land granted is to be located by a line drawn due east and west so as to cut from the larger tract the number of acres specified in the deed.

3. A mortgagee is a privy in estate with the mortgagor as to actions begun before the mortgage is executed, but he is not bound by a judgment against the mortgagor in a suit begun after the mortgage is given, unless he is a party to the suit.

Argued June 17,—Decided November 14, 1908.

Claim. Before Judge Brand. Clarke superior court. November 26, 1907.

W. H. Ficklin was the owner of a tract of land. On March 13, 1895, he executed a mortgage on the same to Moody. The mortgage was transferred to Holliday, who obtained a judgment of foreclosure. Holliday transferred the execution and judgment to Mrs. O'Farrell. In 1897 a portion of the land was sold at a tax sale to Thomas Potts, treasurer, the tax deed describing the land so sold as follows: "About twenty-five acres of land, more or less, in Clarke county, Georgia, and in the corporate limits of the city of Athens, and bounded as follows: On the west by Sandy Creek Bridge Road, on the north by other lands of W. A. Ficklin, and on the south and east by streets, said land being in a triangular shape." An execution for the taxes of 1897 was issued against Ficklin, and on March 9, 1898, it was levied upon a portion of the land embraced in the mortgage, the levy being as follows: "I have this day levied the within fi. fa. on a tract or lot of land lying in the 216 district, G. M., said county, containing twenty-five acres, it being a part of the W. H. Ficklin lands, bounded on the west by Sandy Creek Bridge Road, on the north by part of the Ficklin lands, on east by an unknown street, on south by lands owned by Loan Association of Henrico County, Va., Thomas Potts, treasurer; levied on as the property of defendant, W. H. Ficklin; pointed out by J. T. Anderson, agent." At a sale pursuant to this levy S. L. Davis became the purchaser, and the sheriff executed a deed to him on April 5, 1898. On April 9, 1900, Davis executed a deed to W. P. Vondereau. On May 3, 1899, Ficklin filed an equitable petition against Davis, W. P.

Vondereau, and Mrs. L. J. Vondereau, alleging that the twenty-five acres above referred to had been sold at tax sale to Davis, who had executed a bond for title to Mr. Vondereau, and charging that the tax sale was void for the reason that the levy was excessive. There was no allegation that the description of the land in the levy was insufficient. The defendants filed a joint answer, in which they denied that the levy was excessive; and set up that Ficklin was estopped from attacking the sale, for the reason that the land was pointed out for levy by his authorized agent, who after the sale received from the sheriff the surplus of the proceeds of the sale, after the payment of the taxes and costs. A verdict was returned finding "for the defendants the property in dispute, that the sale under the tax fi. fa. was a good and legal sale, and that the title to the property in dispute is in S. L. Davis." A decree was entered, making the verdict the decree of the court. On May 8, 1902, the mortgage execution was levied upon the land therein described. On June 2, 1902, W. P. Vondereau interposed a claim to the land as described in the tax deed to Davis. The claim of Vondereau was returned to the superior court for trial. The claimant filed an amendment to his claim, describing it as a plea of res adjudicata, in which it was set up that the plaintiff in the mortgage execution was concluded, by the decree in the case of Ficklin v. Davis et al., from attacking the sale. The case came on for trial at the October term, 1906, and the jury under the charge of the court returned a verdict for the plaintiff in execution. The claimant filed a motion for a new trial, upon the general grounds, which was subsequently amended by the addition of certain special grounds. On November 26, 1907, the court set aside the verdict and granted a new trial, and the plaintiff excepted.

W. M. Smith, H. C. Tuck, and Cobb & Erwin, for plaintiff.

T. S. Mell, contra.

Evans, P. J. (After stating the facts.)

1. This is the first grant of a new trial to the claimant, and under the Civil Code, §5585, the judgment will not be disturbed unless the law and the facts demanded the verdict. The plaintiff in error contends that the title of the claimant depends on the validity of the tax sale at which Davis was the purchaser, and that this sale is void for the reason that the description of the

land in the levy and in the sheriff's deed is so vague and uncertain that it is impossible to locate the land, even with the aid of parol evidence. If the claimant's title be found invalid, the verdict would be demanded by the evidence.

It is essential to the validity of a deed that the land granted be sufficiently described to enable it to be identified. Any description will suffice which identifies the land with such certainty that the specific parcel intended to be granted can be ascertained, either by the calls of the instrument as applied to the land, or by aid of the descriptive portions of the grant. As was said in *Crawford* v. *Verner,* 122 *Ga.* 814 (50 S. E. 958), "the test as to the sufficiency of the description contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable." The same rule for determining the sufficiency of a deed made by an individual applies to a deed made by the sheriff, for the sheriff is but the agent of the defendant in execution, constituted and authorized by the law to convey to the purchaser at sheriff's sale the title of the defendant in execution. Where a deed purports to convey a part of a larger territory it must contain something by which the smaller area can be segregated from the larger. Does the deed from the sheriff to Davis measure up to this requirement? The descriptive clause of the deed is "a tract or lot of land lying in the 216 district G. M., said county [the deed was executed in Clarke county], containing twenty-five acres, it being a part of the W. H. Ficklin lands, bounded on the west by Sandy Creek Bridge Road, on the north by part of the Ficklin lands, on the east by an unknown street, on the south by lands owned by Loan Association of Henrico county, Va., Thomas Potts, treasurer; levied on as the property of the defendant, W. H. Ficklin; pointed out by J. T. Anderson, agent." The western and eastern boundaries are respectively a road and a street, and are therefore fixed and certain. The southern boundary calls for the land owned by the Loan Association of Henrico County, Va., Thomas Potts, treasurer. The plaintiff in execution offered in evidence a tax deed from Weir, sheriff, to Thomas Potts, conveying "about twenty-five acres of land, more or less, in Clarke county, Georgia, and in

the corporate limits of the city of Athens, and bounded as follows: On the west by Sandy Creek Bridge road, on the north by other lands of W. A. Ficklin, and on the south and east by streets, said land being in a triangular shape." It is her contention that this is the deed under which the Loan Association of Henrico County, Va., Thomas Potts, treasurer, acquired title to the land described as the southern boundary, and that this boundary can only be fixed by the terms of the deed, and that the land is so indefinitely described therein that it is incapable of exact location. We may readily concede that this deed is invalid as title, because of its indefinite description of the land, under the ruling in the case of *Huntress* v. *Portwood,* 116 *Ga.* 351 (42 S. E. 513). But it does not follow from this circumstance that the call for the Loan Association tract as a southern boundary could not furnish a line of boundary between the parcels of land claimed to be owned by the Loan Association and that sold to Davis. The call of the Davis deed for the southern boundary therein described is not for the deed to Potts, treasurer, or any lines fixed in that deed, but for the line of another tract of land, viz.: that of the Loan Association of Henrico County, Va. Where the line of another tract is called for in the description of a deed as one of the boundaries of the land conveyed, the line must be run to such boundary line. If the boundary is given as the land of another, the description of this particular boundary will be sufficient, although the name of the person given as an adjoining owner may be incorrect, if it be made to appear that the maker of the deed recognized him as the owner, and as claiming the land at the time the deed was made. 2 Devlin on Deeds, §1014. The designation of another tract as a boundary is part of the description of the land conveyed, and extrinsic evidence is admissible to show its location. When this is done, the line of such tract becomes the boundary line of the land called for by the deed. It was shown in this case that the Potts tract had been definitely marked out before the land in controversy was sold to Davis at the tax sale. We can not agree, therefore, with the contention of the plaintiff in execution that the southern boundary of the land in controversy is not susceptible of exact location.

2. We have come to that point in the construction of the deed from Weir, sheriff, to Davis, where we find that the land purporting to be conveyed is bounded on the east, west, and south

by boundaries susceptible of exact location; it only remains to consider whether the northern boundary, from the calls of the deed, is capable of being located. It will be noticed that the conveyance is of a definite and exact number of acres of land. Ordinarily the quantity of the land enumerated in a deed is immaterial, but when the boundary line is not clearly stated, then the quantity becomes an important and material element in the description of the land conveyed. In the deed before us we have these factors: the land is to be cut off from an irregularly shaped tract of land belonging to W. H. Ficklin, the defendant in fi. fa.; the parcel to be detached is to contain twenty-five acres, and is bounded on a road on the west side, by a street on the east side, and by another tract of land on the south. These lines as given in the calls may not strictly conform to the points of the compass, but they are definitely located by fixed physical boundaries. Is it not a fair inference that it was intended that the line between the larger and the smaller area should run from east to west, and be so located as to include twenty-five acres between the northern and southern boundaries? If the northern boundary line be run due east and west, it could only be located at one place so as to embrace twenty-five acres. It is a cardinal rule in the construction of deeds that a deed will not be held to be void for uncertainty if by any reasonable construction it can be upheld. Certainly it is not unreasonable to say that the parties intended the northern boundary should be run due east and west, when by so doing the grantee receives twenty-five acres of land with boundaries as stated in the deed. This question was before the Supreme Court of North Carolina in the case of Webb *v.* Cummings, 127 N. C. 41 (37 S. E. 154). In that case the grantor owned an irregularly shaped tract containing 430 acres; he conveyed to his wife 200 acres. The descriptive language in the deed was "a certain tract of land situated on the east side of [the grantor's] tract he now resides on, to contain 200 acres, and adjoining the lands of D. V. Mercer, W. Y. Webb, and [the grantor's] land on the west side." It was held that the divisional line between the land of the grantor and the grantee could be located by a line run due north and south through the whole tract, so as to cut off 200 acres on the eastern side of the line. A similar holding was made in Currier *v.* Nelson, 96 Cal. 505 (31 Pac. 531, 31 Am.

St. R. 239) ; Reed v. Tacoma Bldg. & Savings Assn., 2 Wash. 198 ·(26 Pac. 252, 26 Am. St. Rep. 851) ; Oskaloosa Col. v. Wes. Un. Fuel Co., 90 Iowa, 380 (54 N. W. 152, 57 N. E. 903). A grantor who conveys a part of an irregularly shaped tract of land, describing the land conveyed as a certain definite number of acres and bounded on three sides by definite boundaries, and on the north by his land, in the absence of a contrary intent appearing, will be deemed as locating the divisional line between himself and the granted land to be run due east and west, so as to give to the grantee the quantity of land specified in the deed. It may be that at the time the deed was executed the grantor and grantee agreed upon a divisional line and made a practical location of it, the course of which was not exactly east and west or north and south. In such a case the located line would prevail. *Osteen* v. *Wynn,* 131 *Ga.* 209 (62 S. E. 37). And some cases may possibly be conceived where extraneous testimony may be received to show that the divisional line was not intended to run due east and west or due north and south. Reed v. Tacoma Assn., supra. But this point is not now before us.

The conclusion we have reached is in perfect harmony with the cases of *Walden* v. *Walden,* 128 *Ga.* 126 (57 S. E. 323), and *Shackelford* v. *Orris,* 129 *Ga.* 791 (59 S. E. 772). In the latter case the description of the land in the deed was very similar to that in the deed before us. It was "the 15 acres hereby conveyed are bounded as follows: north by lands of T. B. Crouch and Wm. Stucker; south by lands of the party of the first part; east by the Louisville public road; and west by the Louisville plank road (old Southwestern road)." It was held that the description afforded sufficient means of ascertaining and identifying, by competent extrinsic evidence, the land intended to be conveyed, and was not void for uncertainty.

3. We will next examine into the merits of the plea of res adjudicata filed by the claimant in aid of his claim. The main feature of the pleading which eventuated in the decree was an attack by Ficklin on the tax sale to Davis, on the ground that the levy was excessive. The parties to the suit were W. H. Ficklin as plaintiff, and S. L. Davis, L. J. Vondereau, and W. P. Vondereau as defendants. The petition was filed May 3, 1899, four years after Ficklin had mortgaged the land to Moody. Neither

Moody nor the assignee of the mortgage was a party to the suit. A mortgagee is a privy in estate with the mortgagor as to actions begun before the mortgage is executed; but he is not bound by a judgment against the mortgagor in a suit begun after the mortgage is given, unless he is a party to the suit. Keokuk R. Co. *v.* State, 152 U. S. 301 (14 Sup. Ct. 592, 38 L. ed. 450). The decree which was set up in the amendment to the claim does not conclude the plaintiff in execution as to the matter therein adjudicated.

From the foregoing it will be seen that the evidence did not demand the verdict, and there was no error in granting a new trial.

*Judgment affirmed.    All the Justices concur.*